**Dennis M. TRIGG, Individually, and Hometown Oil Company, Inc.**

v.

**TEXACO, INC.**

**Civ. A. No. H–81–333.**

United States District Court, S. D. Texas, Houston Division.

March 25, 1981.

---

Donald H. Grissom, Joe Lea, Jr., Lea & Price, Austin, Tex., for plaintiffs.

Randall B. Robinson, White Plains, N. Y., Bruce C. Bailey, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

O'CONOR, District Judge.

Dennis M. Trigg, Individually and as Hometown Oil Company, Inc. brings before this Court an Application for a Preliminary Injunction pursuant to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* This action for injunctive relief, seeks to enjoin Texaco from terminating the sale of motor fuel products to Hometown and from removing any equipment or evidence of the Texaco brand from the applicant's property. Briefs were filed by both parties and hearing was held on March 13, 1981. Upon consideration of applicant's evidence and the argument of counsel, this Court ruled from the bench denying the application for the reasons that will be set out here.

Dennis M. Trigg, operating through Hometown Oil Company, Inc. (Hometown), distributes gasoline to a chain of gasoline stations in the Baytown, Texas area. He also owns and operates his own retail facilities under the Texaco brand. In April, 1973 Texaco and Hometown entered into a consignment agreement by which Texaco would supply Texaco brand products to Hometown for resale to local retailers. At the same time, in separate agreements, Mr. Trigg entered into lease-back and retail supply agreements with Texaco which allowed the applicant to operate two Texaco outlets in addition to the consignment rela-

tionship. In September, 1979 Texaco sent Hometown a "Notice of Termination and Nonrenewal" which terminated the consignment agreement between the parties. This termination, which became effective on December 13, 1979, was done in accordance with the Petroleum Marketing Practices Act (Act) and is not contested in the present action.

After the consignment contract was terminated, Texaco continued to supply gasoline to Hometown for resale. On January 23, 1981 President Reagan, by executive order, lifted all regulations controlling crude oil and refined petroleum products. Shortly thereafter, on February 20, 1981 Texaco notified Mr. Trigg that it would cease supplying him petroleum products on March 20, 1981. Mr. Trigg then filed the present application for preliminary injunction seeking to enjoin Texaco from taking such action. It is the characterization of this relationship between Hometown and Texaco between December 13, 1979 and February 20, 1981 that is the center of the controversy between the parties.

The applicant argues that the executive order deregulating oil did not repeal the Petroleum Marketing Practices Act, and in this he is obviously correct. Applicant further asserts that a franchisee may enforce the Act by way of a preliminary injunction, which is also undeniably provided for in 15 U.S.C. § 2805(b). However, the Act places the burden of proof on the applicant-franchisee to show that it was engaged in a franchise relationship with the franchisor and that termination occurred in violation of the Act. 15 U.S.C. § 2805(c). The applicant in this case has failed to prove the former and is not entitled to a preliminary injunction pursuant to the Act.

The Act defines a "franchise" to include any *contract* for the sale, consignment or distribution of motor fuel under a trademark. 15 U.S.C. § 2801(1)(B). Examples of a franchise relationship squarely covered by the Act are the agreements between Trigg and Texaco concerning the applicant's Texaco retail outlets. At the hearing Texaco stipulated that the February 20, 1981 termi-

nation notice did not affect the retail outlets covered by separate contracts and that Texaco would continue to supply them products in accordance with the existing agreements. What is at issue in this action is whether Texaco's separate relationship with Hometown enabling the applicant to "distribute" Texaco petroleum products created a "franchise" protected by the terms of the Act.

A contractual consignment relationship existed between Hometown and Texaco from April, 1973 until December, 1979. This relationship ended on December 13, 1979, but Texaco continued to meet Hometown's requirements for petroleum products treating applicant as a distributor in this respect. No distribution agreement was ever executed; however, negotiations continued towards such an agreement in the following year. The parties entered into a "Texaco Retailer Travel Card Agreement" on December 13, 1979 which allowed Hometown to accept Texaco credit cards and to use the invoices from credit sales to facilitate the wholesale purchase of more petroleum products. The gasoline purchased under this arrangement always was delivered in Texaco vehicles. Applicant argued that the credit card agreement and the informal distributor relationship created a contractual relationship, either oral or implied, and makes Hometown a franchisee under the Act.

This Court finds that no contract existed. When the consignment agreement of April, 1973 terminated on December 13, 1979, Department of Energy regulations under the Mandatory Petroleum Allocation Program prohibited the revision or termination of supplier/wholesale purchaser relationships except by mutual consent of the parties. 10 C.F.R. § 211.9 (1980). Termination of the April, 1973 consignment agreement was unilaterally executed by Texaco, but the regulations compelled it to continue supplying Hometown as long as the regulatory program was in effect. On January 18, 1981 these regulations were lifted by Executive Order and the compulsion was removed. That Texaco was involuntarily

**450**

continuing to supply gasoline to Hometown was clearly communicated to Mr. Trigg on several occasions. *See* Defendant's Exhibit 5. Where a party is compelled to perform, there exists no consensual relationship and there can be no contract.

Hometown also argues that Texaco has treated it like a distributor even in the absence of a written agreement and that Texaco should be estopped from denying that a franchise relationship exists for purposes of the Petroleum Marketing Practices Act. This Court finds that Texaco did continue to supply products to Hometown on a wholesale basis and that Texaco knew that Hometown was supplying local Texaco retail outlets. Also, it is established that gasoline was delivered to Hometown in Texaco tankers. However, Hometown never received a hauling allowance or credit terms enjoyed by true Texaco distributors. Moreover, Hometown never was allocated diesel fuel, never received temperature variation credit, and never was allowed to pick up gas at the Texaco refinery. In short, Hometown was not treated as other Texaco distributors and this is precisely what Mr. Trigg and Texaco were negotiating: whether Hometown was to *become* a distributor of Texaco products. Texaco provided gasoline to Hometown only because it was required to do so by the Department of Energy regulations. When the regulations ended, the status of the parties reverted back to that of December 13, 1979, the date which the parties agree that the consignment agreement was lawfully terminated. The applicant has failed to prove that a franchise relationship existed between Texaco and Hometown and therefore cannot avail itself of injunctive relief under the Act. It is, therefore,

ORDERED, ADJUDGED and DECREED that Dennis M. Trigg and Hometown Oil Company, Inc.'s Application for Preliminary Injunction is hereby DENIED.